# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:09CV-00079-JHM

| | |
|---|---|
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY | PLAINTIFF |
| and | |
| ENCOMPASS INSURANCE COMPANY | INTERVENING PLAINTIFF |
| v. | |
| M. M., ET AL. | DEFENDANT |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment [DN 25] by Plaintiff American National Property and Casualty Co. ("ANPCC") and a motion for summary judgment [DN 24] by Intervening Plaintiff Encompass Insurance Co. ("EIC").[1]

## I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue

---

[1] Because Plaintiffs' motions for summary judgment and insurance policies are nearly identical, they will be discussed concurrently.

of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. FACTUAL BACKGROUND

This controversy arises out of an underlying state court civil action between J.B., N.B., as plaintiffs, against K.M., M.M., and S.M., as defendants. The state court action involves alleged acts of sexual molestation by K.M., the child of M.M. and S.M. Throughout 2004, 2005, 2006, 2007, and 2008, K.M. allegedly engaged in acts of sexual molestation as well as other harmful acts against B.B. and P.B., the minor children of J.B. and N.B.[2] J.B. and N.B. initiated the underlying state court action seeking damages on behalf of their children due to the harm allegedly caused by K.M. J.B. and N.B. further claimed M.M. and S.M. knew or should have known of K.M.'s harmful acts and failed to exercise reasonable care to prevent the acts. Following the filing of the complaint in the state court action, J.B. and N.B. had the state court record sealed because it contained allegations of childhood sexual molestation. All parties to the state court action are named as Defendants here. The issue presently before the Court involves whether certain home owner's insurance policies

---

[2] K.M. was prosecuted criminally in state court as a juvenile for acts of sexual molestation against P.B. and B.B.

2

issued to K.M., M.M., and S.M. (collectively "Insureds") provide coverage for the allegations made in the underlying state court action.

On April 1, 2002, EIC issued a home owner's insurance policy to Insureds which lapsed on May 1, 2006. ANPCC issued its policy to Insureds beginning April 1, 2006. Both policies included coverage, in relevant part, for claims of bodily injury caused by an occurrence during the policy period. ANPCC's policy excluded coverage for "BODILY INJURY/PROPERTY DAMAGE or MEDICAL EXPENSES:" (1) "arising out of actual alleged or threatened sexual harassment or molestation, corporal punishment, or physical or mental abuse"; and (2) "expected by, caused intentionally by or at the direction of any INSURED or resulting from intentional and malicious acts of any INSURED." (ANPCC Mot. Summ. J. 7-8.) EIC's policy similarly provided exclusions for "[p]ersonal liability and medical expense" relating to "bodily injury or property damage:" (1) "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse"; and (2) "[i]ntended by, or which may reasonably be expected to result from the intentional acts or omissions of one or more covered persons." (EIC Mot. Summ. J. 4-5.) In this action, the insurance companies seek a declaration that their respective policies do not extend coverage to Insureds in the underlying action because of the above exclusions.[3]

## III. DISCUSSION

Plaintiffs assert that the exclusions found in the home owner's insurance policies clearly deny coverage for the intentional and sexual acts allegedly committed by K.M. Defendants contend that the "allegations are not limited solely to intentional or sexual acts" as "additional acts of

---

[3] J.B. and N.B. are the sole defendants who offered a memorandum in opposition to the motions for summary judgment.

negligence of both K.M., the minor defendant, and his parents Defendants M.M. and S.M. have been alleged." (Def. Resp. Summ. J. 3.)

**A. Policy Exclusions**

Two well recognized principals employed by Kentucky courts guide interpretation of the exclusionary provisions cited by Plaintiffs: "'(1) [insurance contracts] should be liberally construed and all doubts resolved in favor of the insureds; and (2) exceptions and exclusions should be strictly construed to make insurance effective.'" K.M.R. v. Foremost Ins. Group, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005) (quoting Grimes v. Nationwide Mutual Ins. Co., 705 S.W.2d 926, 931 (Ky. Ct. App. 1985)). However, an insurance policy, like any other contract, "should be interpreted according to the parties' mutual understanding at the time they entered into the contract." Nationwide Mut. Ins. Co. v. Nolan, 10 S.W.3d 129, 131 (Ky. 1999) (citation omitted). If possible, the "mutual intention is to be deduced . . . from the language of the contract alone." Id. at 131-32. Therefore, where the words of an insurance policy are clear and unambiguous, they "should be given their plain and ordinary meaning." Id. at 131 (citation omitted).

Both the "sexual molestation exclusion" and the "intentional acts exclusion" found in Plaintiffs' insurance policies clearly and unambiguously exclude coverage for claims of sexual molestation. The Plaintiffs' policies exclude coverage for bodily injury "*arising out of* actual, alleged, or threatened sexual harassment or molestation." (ANPCC Compl. ¶ 17; EIC Compl. ¶ 20) (emphasis added.) Both policies also exclude coverage for intentional acts committed by insureds. ANPCC's relevant language excludes coverage "for bodily injury expected by, caused intentionally by or at the direction of *any insured*, or resulting from intentional and malicious acts of *any insured*." (ANPCC Br. Summ. J. 7) (emphasis added.) Likewise, EIC's policy provides that

4

coverage does not apply to bodily injury "intended by, or which may reasonably be expected to result from the intentional acts or omissions *of one or more covered persons*." (EIC Br. Summ. J. 5) (emphasis added.) Kentucky courts have held that "[w]ithin the context of liability insurance . . . acts of sexual molestation [are] intentional as a matter of law." Foremost, 171 S.W.3d at 755. See Thompson v. West Am. Ins. Co., 839 S.W.2d 579, 581 (Ky. Ct. App. 1992) ("We believe that sexual molestation is so inherently injurious, or substantially certain to result in some injury, that the intent to injure, or the expectation that injury will result, can be inferred as a matter of law.").

Defendants seek to avoid the clear policy language by advancing certain arguments. First, Defendants claim that not all allegations in the state court action are related to sexual molestation or intentional acts. Second, that the policies do not specifically exclude coverage for the negligent supervision claim made against the parents of K.M. Third, that a severability clause in one of the policies creates a reasonable expectation that each insureds interests are covered despite the acts of another thereby rendering the policy ambiguous in light of the exclusions which attempt to bar coverage to an insured based upon the acts of another insured. And finally, Defendants argue that the sexual molestation exclusion is not effective because it is stated in an amendment to the policy. The Court will discuss these arguments in turn.

   **1. Allegations unrelated to sexual molestation**

Although Defendants do not deny that sexual molestation is alleged to have occurred, they state that additional acts of negligence of K.M. and his parents have been alleged. Defendants do not state precisely what those claims of negligence are which are purportedly unrelated to the sexual molestation allegations. Instead, they argue that it is early in the litigation process and that it is too early to tell what evidence may be presented to a state court jury. Defendants maintain that if K.M.

5

defends the state court civil action in the same manner as he defended his juvenile criminal matter, the jury could find him liable for negligence as opposed to intentional acts or sexual molestation.

In this summary judgment motion, the insurers have met their burden in showing an absence of a genuine issue of fact related to whether the state court claims are excluded by their policy provisions. The burden therefore shifts to the Insureds. While they complain that discovery is not complete, they do not state what they expect discovery to show. While they speak of K.M.'s defense during the juvenile court matter, they do not provide any details of it claiming the confidential nature of the proceeding. If Defendants possess any facts upon which they based their allegations of negligence, they were required to come forward at this time in order to avoid summary judgment in favor of the insurers. They have failed to do so.

Defendants failure to do so is understandable. This case is about sexual molestation. Defendants requested that the state court record be sealed, "due to the fact that it contains allegations of childhood sexual abuse." (ANPCC Compl. ¶ 24.) No matter how one might label the claims, they arise as a result of the alleged acts of K.M., which Defendants admit constitute sexual molestation. The Court therefore concludes that Defendants have not shown a genuine issue of fact that any of their claims do not arise as a result of sexual molestation.

### 2. Claim of Negligent Supervision

Defendants have alleged that M.M. and S.M. knew or should have known of K.M.'s harmful acts and were therefore negligent in failing to prevent the acts. On facts analogous to the case at hand, the plaintiff in Foremost likewise presented a negligent supervision theory by establishing that "[insured] was aware of [the offender's] 'deviant sexual and aggressive propensity'; that [insured] failed to provide adequate supervision over [plaintiff] or to protect her from [the offender]; and that

6

[insured] failed to warn [plaintiff] or her mother of the risks inherent in associating with [the offender]." 171 S.W.3d at 752. Finding that the sexual molestation exclusion relieved insurer from responsibility to defend insured against plaintiff's negligent supervision theory, the court in Foremost explained that:

> In drafting [the sexual molestation] exclusion, [insurer] did not limit the exclusion to acts committed by its insureds. Rather, the exclusion removed from coverage *an entire category* of injuries; i.e., those arising out of sexual acts and physical or mental abuse. This plainly worded exclusion should dispel any expectation of the [insureds] that either was entitled to be defended or indemnified by [insurer] against a claim arising from sexual molestation-regardless of the identity of the actual perpetrator of the sexual offense.

Id. at 756.

Defendants seek to distinguish Foremost from the facts of this case by noting that the insurer in Foremost included a specific negligent supervision exclusion, whereas, in this case, no such specific exclusion exists. The Court disagrees. Despite the lack of a specific exclusion covering negligent supervision in the policies here in question, the Court finds, just as in Foremost, that "other plainly worded provisions also support the court's judgment in applying the exclusion so as to deny coverage to [insureds]." Id. at 755. The exclusions found here remove from coverage an entire category of claims----those arising out of sexual molestation and intentional acts. The Court agrees with Judge Heyburn's rationale in West American Insurance Co. v. Embry, 2005 WL 1026185, at *3 (W.D. Ky. April 25, 2005), and believes also that "Kentucky courts would apply a broad meaning to the phrase 'arising out of' in insurance contracts . . . and would feel comfortable requiring only some causal relation or connection between the claim and the underlying event." Despite the fact that there is no allegation that K.M.'s parents were involved in the actual acts of molestation, the claim of negligent supervision claim arises as a result of the molestation. Therefore, the negligent

7

supervision claim is excluded from coverage.

### 3. Severability Clause

ANPCC's severability clause provides: "[t]his insurance applies separately to each INSURED. This condition shall not increase OUR limit of liability for any one OCCURRENCE." (Def. Resp. Summ. J. 5.) Defendants contend that the severability clause would lead a reasonable person to "believe that the acts of one insured would not bar coverage for another insured, because the 'insurance applies separately to each insured.'" (Id. at 6.) Defendants urge the Court to find the policy ambiguous since the exclusions seek to bar coverage for an insured due to the acts of another insured.[4] Accordingly, because of the ambiguity, Defendants urge the Court to construe the policy in favor of the insureds' reasonable expectations.

"In Kentucky, a clearly worded exclusion is not treated as ambiguous or rendered unclear by the mere existence of a severability provision." Foremost, 171 S.W.3d 751 at 755 (citing Nat'l Ins. Underwriters v. Lexington Flying Club, Inc., 603 S.W.2d 490, 492 (Ky. Ct. App. 1980)). See Am. Nat'l Bank & Trust Co. v. Hartford Accident & Indem. Co., 442 F.2d 995, 999 (6th Cir. 1971) ("unambiguous and clearly drafted exclusions which are 'not unreasonable are enforceable'") (quoting General Exchange Ins. Corp. v. Kinney, 129 S.W.2d 1014, 1017 (Ky. Ct. App. 1939). In the limited cases where exclusionary provisions have been deemed ambiguous due to a severability clause, the language of the exclusions differed significantly from those here. Defendants cited Northwestern National Insurance Co. v. Nemetz, where an exclusionary provision was found ambiguous when coupled with a severability clause. 400 N.W.2d 33, 37 (Wis. Ct. App. 1986). In Nemetz, the exclusions related to bodily harm "expected or intended by *an* insured" and damages

---

[4] It is unclear from the pleadings whether EIC provided for a severability clause.

8

"intended or expected by *the* insured." Id. The court in Taryn E.F. *ex rel*. Grunewald v. Joshua M.C., 505 N.W.2d 418 (Wis. Ct. App. 1993), distinguished between the exclusionary language found in Nemetz and that at issue in Taryn:

> [T]hat by using the terms 'an insured,' and 'the insured' in [the] exclusionary provisions [found in Nemetz], the insurers failed to adequately draft the policy to exclude coverage for both insureds based on the excludable acts of one insured. Thus, we held that the exclusionary clauses precluded coverage for the insured who committed the excludable acts, but not for the innocent insured. Here, the exclusionary clause precludes coverage under the policy based on the excludable acts of *any* insured. Even when read with the severability clause, this exclusion unambiguously operates to preclude coverage to all insureds for liability attributable to the excludable acts of any one of the insureds.

Taryn, 505 N.W.2d at 421 (citation omitted).

Kentucky courts have held that the reasoning found in Taryn "is consistent with Kentucky precedent." Foremost, 171 S.W.3d at 755. See Liberty Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 522 S.W.2d 184, 186 (Ky. 1975) ("purpose of [the severability] clause is to guarantee the same protection to all persons named as insureds and not to take exclusions out of the policy"); Nat'l Ins. Underwriters, 603 S.W.2d at 492 ("purpose [of a severability clause] is not to negate bargained-for exclusions which are plainly worded"). ANPCC carefully drafted its intentional act exclusion using the words "any insured" which, despite the severability clause, unambiguously excludes coverage to any insured for liability based on the excludable actions of any other insured. Therefore, the Court does not find any ambiguity in ANPCC's policy due to the severability clause included therein.

### 4. Exclusion Found Within Amendment

Defendants also note that EIC's sexual molestation exclusion appears as an amendment to

9

the original policy. (Def. Resp. Summ. J. 6.) Defendants contend that EIC's failure to provide for the sexual molestation exclusion in the original body of the agreement violates the reasonable expectation doctrine and is therefore unenforceable. Defendants have construed the doctrine too broadly:

> The reasonable expectation doctrine is based on the premise that policy language will be construed as laymen would understand it and applies only to policies with ambiguous terms-e.g., when a policy is susceptible to two (2) or more reasonable interpretations. Under the reasonable expectations doctrine, when such an ambiguity exists, the ambiguous terms should be interpreted in favor of the insured's reasonable expectations.

True v. Raines, 99 S.W.3d 439, 443 (Ky. 2003) (citation omitted) (internal quotation marks omitted). The language of EIC's sexual molestation exclusion is unambiguous. The fact that the exclusion appeared as an amendment does not render the policy ambiguous. Thus, the reasonable expectation doctrine does not apply.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment [DN 25] by Plaintiff American National Property and Casualty Co. and the motion for summary judgment [DN 24] by Intervening Plaintiff Encompass Insurance Co. is **GRANTED**.

cc: Counsel of Record